# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

PETER C. TAYLOR,

      Petitioner,      Case Number: 06-CV-10175

v.               HON. GEORGE CARAM STEEH

KENNETH T. MCKEE,

      Respondent.
               /

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

Petitioner Peter C. Taylor, a state inmate currently incarcerated at the Bellamy Creek Correctional Facility in Ionia, Michigan, has filed a *pro se* petition for a writ of habeas corpus. Petitioner challenges his convictions for second-degree murder, two counts of felonious assault, and felony firearm. For the reasons set forth below, the Court denies the petition.

**I. Background**

Petitioner's convictions arise out of a shooting incident outside the Riverside Arena roller skating rink in Livonia, Michigan, on May 2, 1999. The shooting killed Larry Williams, Jr. (Williams). Shots were also fired at Doris Williams and Tonya Jones.

On May 2, 1999, Orquidia (Kitty) Oriel was hosting a party for her son at the Riverside Arena. At the time of the shooting, Kitty was engaged to Petitioner (a police officer), and Larry's father, Williams, was married to Trina Williams.

Williams' mother Doris Williams (Doris) testified that she arrived at the roller skating rink for her grandson's birthday party at approximately 3:00 p.m. When she arrived, Williams and his wife Trina were sitting in their car. Williams then went into the roller skating rink to tell

Larry that he could not stay for the party because Kitty would not allow his wife to attend the party. Doris remained outside the arena talking to a few family members. Petitioner then exited the arena in an agitated state. She testified that he was yelling because Williams had entered the arena. He then hollered obscenities at Doris. Doris told security officers to call the police. She testified that Petitioner then punched her in the face, which caused a cut, a black eye and a swollen face. Raquel Rivera and Carmen Jones restrained Petitioner. When Doris's daughter, Tonya Jones learned her mother had been struck by Petitioner, she struck him. Doris testified that, moments later, Petitioner caught sight of Williams in the parking lot. He leapt over a railing and reached for his service revolver. Doris testified that she tried to pull Petitioner's gun from him as he leapt over the railing, but he pulled away. Petitioner then reached Williams and shot him in the chest. After Williams fell to the ground, Petitioner shot him twice more. He then fired the gun at Tonya and Doris.

Tonya Jones testified that Williams was her brother and that she was at the Riverside Arena on the day of the shooting. After learning that Petitioner had struck her mother, she struck him in the face. Petitioner then ran after her brother in the parking lot. She saw Petitioner shoot her brother three times. He then shot at her and her mother.

Several additional eyewitnesses testified in a manner generally consistent with the testimony given by Tonya Jones and Doris Williams.

Forensic pathologist Yung Chung testified that she conducted an autopsy of Williams. She determined the cause of death to be multiple gunshot wounds.

Petitioner testified in his own defense. He testified that, on the date in question, he was employed by the Detroit Police Department. He testified that the shooting occurred after he was

surrounded by Williams and Williams' family members, who began hitting him. He heard someone yell, "Grab his gun." Williams grabbed him around his waist and attempted to grab Petitioner's gun. Petitioner was able to wrestle the gun away from Williams and then fired three shots in Larry's direction.

Petitioner's fiancee, Kitty testified for the defense. She testified that Williams and a group of others surrounded Petitioner in a threatening way and jumped on him. She then ran to the lobby of the arena, where she was when shots were fired.

Following a jury trial in Wayne County Circuit Court, Petitioner was convicted of second-degree murder, two counts of felonious assault, and possession of a firearm during the commission of a felony. On April 28, 2000, Petitioner was sentenced to twenty-three to fifty years imprisonment for the second-degree murder conviction, one to four years for each of the felonious assault convictions, to be served concurrently with one another and consecutively to two years imprisonment for the felony-firearm conviction.

Petitioner filed an appeal of right in the Michigan Court of Appeals, presenting the following claims:

I. The prosecution presented insufficient evidence to support Mr. Peter C. Taylor's conviction on either count of assault with a dangerous weapon.

II. The trial court erred in refusing the jurors' request for a transcript of the testimony of the witnesses and a jury request to participate in the questioning of two of the witnesses.

III. The defendant was denied his constitutional right to effective assistance of counsel by counsel's failure to secure and call a res-gestae witness that would have corroborated his self-defense argument.

The Michigan Court of Appeals affirmed Petitioner's convictions. People v. Taylor, No. 228039 (Mich. Ct. App. Apr. 17, 2003).

Petitioner filed an application for leave to appeal in the Michigan Supreme Court. He raised the same claims presented to the Michigan Court of Appeals and the following additional claims:

> I. Defendant was convicted on felonious assault which the victim claim to have "bullet fragments" in her arm which wasn't support by the medical report. And the second felonious assault count had no physical evidence supported that defendant fired more than four rounds. There are no medical report support harm or injuries in the three count of felonious assault.
>
> II. A statement given by an eye witness support[s] . . . claim of self-defense. And Livonia police department property records support writer claim that evidence was insufficient to support his convictions. And perjury testimony was used to obtain a criminal conviction. Due to rounds fired match evidence collect which support . . . claim of self-defense.

The Michigan Supreme Court denied leave to appeal. People v. Taylor, No. 123834 (Mich. Oct. 31, 2003).

Petitioner then filed a motion for relief from judgment in the trial court, presenting the following claims:

> I. Did the prosecution present insufficient evidence of defendant's second degree murder conviction when the prosecutor failed to prove the elements of malice by probative evidence.
>
> II. Was defendant denied the sixth amendment right to effective assistance of counsel when trial counsel failed to investigate and present evidence of defendant's innocence.
>
> III. Did the prosecutor fail[] to disclose . . . exculpatory material evidence at trial which would have affect[ed] the credibility of the state witness which the evidence was relevant to the defendant affirmative . . . defense (self-defense).
>
> IV. The prosecution presented insufficient evidence to support defendant's conviction of either count of assault with a dangerous weapon.
>
> V. The defendant was denied his constitutional right to effective assistance of counsel by counsel's failure to secure and call a res-gestae witness that would have corroborated his self-defense argument.

VI. Did the prosecutor present a mislead[ing] exhibit into trial for the jury to review to gain a conviction of the defendant . . . confus[ing] . . . jury into believing that the evidence present was correct and not prejudice as a matter of law.

VII. The trial court erred in refusing the jurors' request for transcript of the testimony of the witness and a jury request to participate in the question of two of the witness.

The trial court denied the motion. People v. Taylor, No. 99-006381 (Wayne County Circuit Court June 24, 2004).

Petitioner then filed applications for leave to appeal the trial court's denial of his motion for relief from judgment in the Michigan Court of Appeals and Michigan Supreme Court. Both state appellate courts denied leave to appeal. People v. Taylor, No. 259354 (Mich. Ct. App. June 24, 2005); People v. Taylor, No. 129052 (Mich. Nov. 29, 2005).

Petitioner then filed the pending petition seeking habeas relief on the following grounds:

I. Did the prosecution present insufficient evidence of defendant's second degree murder conviction when the prosecutor failed to prove the elements of malice by probative evidence.

II. Was defendant denied the sixth amendment right to effective assistance of counsel when trial counsel failed to investigate and present evidence of defendant's innocence.

III. Did the prosecutor fail to disclose . . . exculpatory material evidence at trial which would have affect[ed] the credibility of the state witness which the evidence was relevant to the defendant's affirmative defense (self-defense).

IV. The prosecution presented insufficient evidence to support defendant's conviction of either count of assault with a dangerous weapon.

V. The defendant was denied his constitutional right to effective assistance of counsel by counsel's failure to secure and call a res-gestae witness that would have corroborated his self-defense argument.

VI. Did the prosecutor present[] a mislead[ing] exhibit into trial for the jury to review to gain a conviction of the defendant by . . . confus[ing] . . . the jury into believing that the evidence present[ed] was correct and not prejudice as a matter

5

>    of law.
>
> VII. The trial court erred in refusing the jurors' request for transcript of the testimony of the witness and jury request to participate in the question of two of the witness.

## II. Standard of Review

Section 2254(d) of Title 28 U.S.C., imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d). Additionally, this Court must presume the correctness of state court factual determinations. 28 U.S.C. § 2254(e)(1).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. Williams v. Taylor, 529 U.S. 362, 405-06 (2000). An "unreasonable application occurs" when "a state-court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." Id. at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that

6

application must also be unreasonable." Id. at 410-11.

## III. Discussion

### A. Procedural Default

Respondent argues that Petitioner's first, second, third, and sixth claims are procedurally defaulted. The doctrine of procedural default provides:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

Coleman v. Thompson, 501 U.S. 722, 750 (1991). Such a default may occur if the state prisoner files an untimely appeal, Coleman, 501 U.S. at 752, if he fails to present an issue to a state appellate court at his only opportunity to do so, Rust v. Zent, 17 F.3d 155, 160 (6th Cir. 1994), or if he fails to comply with a state procedural rule that required her to have done something at trial to preserve his claimed error for appellate review, e.g., to make a contemporaneous objection, or file a motion for a directed verdict. United States v. Frady, 456 U.S. 152, 167-69 (1982); Simpson v. Sparkman, 94 F.3d 199, 202 (6th Cir. 1996). Application of the cause and prejudice test may be excused if a petitioner "presents an extraordinary case whereby a constitutional violation resulted in the conviction of one who is actually innocent." Rust, 17 F.3d at 162; *see* Murray v. Carrier, 477 U.S. 478, 496 (1986); Dretke v. Haley, 541 U.S. 386, 393 (2004).

For the doctrine of procedural default to apply, a firmly established state procedural rule applicable to the petitioner's claim must exist, and the petitioner must have failed to comply with that state procedural rule. Williams v. Coyle, 260 F.3d 684, 693 (6th Cir. 2001), *cert. denied*, 536 U.S. 947 (2002); *see also* Warner v. United States, 975 F.2d 1207, 1213-14 (6th Cir. 1992).

Additionally, the last state court from which the petitioner sought review must have invoked the state procedural rule as a basis for its decision to reject review of the petitioner's federal claim. Coleman, 501 U.S. at 729-30. "When a state court judgment appears to have rested primarily on federal law or was interwoven with federal law, a state procedural rule is an independent and adequate state ground[] only if the state court rendering judgment in the case clearly and expressly stated that its judgment rested on a procedural bar." Simpson, 94 F.3d at 202. Whether the independent state ground is adequate to support the judgment is itself a federal question. Lee v. Kemna, 534 U.S. 362, 375 (2002).

If the last state court from which the petitioner sought review affirmed the conviction both on the merits and, alternatively, on a procedural ground, the procedural default bar is invoked and the petitioner must establish cause and prejudice in order for the federal court to review the petition. Rust, 17 F.3d at 161. If the last state court judgment contains no reasoning, but simply affirms the conviction in a standard order, the federal habeas court must look to the last reasoned state court judgment rejecting the federal claim and apply a presumption that later unexplained orders upholding the judgment or rejecting the same claim rested upon the same ground. Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991).

The last state court to issue an opinion regarding these ineffective assistance of counsel claims, the Michigan Supreme Court, denied leave to appeal on the ground that Petitioner "failed to meet the burden of establishing entitlement to relief under M.C.R. 6.508(D)." Taylor, No. 129052. The Michigan Court of Appeals denied leave to appeal for the same reason. Taylor, No. 259354. Respondent argues that the Michigan appellate courts' reliance on M.C.R. 6.508(D) establishes procedural default.

M.C.R. 6.508(D) applies to motions for relief from judgment, and states, in relevant part:

> (D) Entitlement to Relief. The defendant has the burden of establishing entitlement to the relief requested. The court may not grant relief to the defendant if the motion
>
> (1) seeks relief from a judgment of conviction and sentence that still is subject to challenge on appeal pursuant to subchapter 7.200 or subchapter 7.300;
>
> (2) alleges grounds for relief which were decided against the defendant in a prior appeal or proceeding under this subchapter, unless the defendant establishes that a retroactive change in the law has undermined the prior decision;
>
> (3) alleges grounds for relief, other than jurisdictional defects, which could have been raised on appeal from the conviction and sentence or in a prior motion under this subchapter, unless the defendant demonstrates
>
> (a) good cause for failure to raise such grounds on appeal or in the prior motion, and
>
> (b) actual prejudice from the alleged irregularities that support the claim for relief . . .

M.C.R. 6.508(D).

"Although 6.508(D)(1), (2), and (3) list specific procedural grounds for denying a defendant relief from judgment, these procedural grounds are not the exclusive grounds for which a court may deny relief pursuant to M.C.R. 6.508(D)." Abela v. Martin, 380 F.3d 915, 922 (6th Cir. 2004). Thus, where the Michigan Supreme Court references only M.C.R. 6.508(D) generally as a basis for denying leave to appeal, that reference, without more, is insufficient to establish that the court denied leave to appeal based upon a procedural ground. Id. However, where other "clarifying indicators" clearly demonstrate the state court's intention to invoke an "independent and adequate state procedural rule" by its general reference to 6.508(D), a federal court may determine that federal habeas review is barred. Id. at 923-924. Other "clarifying indicators" include where state courts below the supreme court specifically invoke a procedural bar. Id. In this case, the trial court, in denying these claims, specifically relied on Petitioner's

9

failure to raise them on direct appeal and failure to show good cause for not doing so. Thus, the trial court clearly relied on Mich. Ct. R. 6.508(D)(3), in denying relief on these claims. Mich. Ct. R. 6.508(D)(3) is a firmly established and regularly followed state ground precluding subsequent federal habeas review absent a showing of cause and prejudice. Luberda v. Trippett, 211 F.3d 1004, 1007 (6th Cir. 2000), *citing* Rogers v. Howes, 144 F.3d 990 (6th Cir. 1998). Thus, the Court finds that the Michigan Supreme Court's reliance on M.C.R. 6.508(D) is sufficient to establish procedural default with respect to these claims. Therefore, Petitioner's claims may not be considered unless he establishes cause and prejudice to excuse the default or that failure to consider his claims will result in a miscarriage of justice.

Petitioner asserts ineffective assistance of appellate counsel to excuse his default. The Supreme Court has held that "cause" under the cause and prejudice standard must be "something *external* to the petitioner, something that cannot be fairly attributed to him." Coleman, 501 U.S. at 753. The Court further held that "[a]ttorney ignorance or inadvertence is not 'cause' because the attorney is the petitioner's agent when acting, or failing to act, in furtherance of the litigation, and the petitioner must 'bear the risk of attorney error' . . . . Attorney error that constitutes ineffective assistance of counsel is cause, however." Id. at 753-54 (internal citations omitted).

In Strickland v. Washington, 466 U.S. 668 (1984), the Supreme Court established a two-pronged test for determining whether a habeas petitioner has received ineffective assistance of counsel. First, a petitioner must prove that counsel's performance was deficient, which "requires a showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." Id. at 687. The Supreme Court has "declined to articulate specific guidelines for appropriate attorney conduct and instead [has] emphasized that '[t]he proper measure of attorney performance remains simply reasonableness under prevailing

professional norms.'" Wiggins v. Smith, 539 U.S. 510, 520 (2003) (quoting Strickland, 466 U.S. at 688; additional internal quotations omitted). However, when assessing counsel's performance, the reviewing court should afford counsel great deference. Strickland, 466 U.S. at 689 (observing that "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time" and that a convicted person who seeks to criticize his attorney's performance "must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy'").

Second, a petitioner must show that counsel's deficient performance prejudiced petitioner. A petitioner may establish prejudice by "showing that counsel's errors were so serious as to deprive the defendant of a fair trial." Id.

The Supreme Court has held that a petitioner does not have a constitutional right to have appellate counsel raise every non-frivolous issue on appeal. Jones v. Barnes, 463 U.S. 745, 754 (1983). The Court further stated:

> For judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every "colorable" claim suggested by a client would disserve the . . . goal of vigorous and effective advocacy. . . . Nothing in the Constitution or our interpretation of that document requires such a standard.

Id. at 754. Strategic and tactical choices regarding which issues to pursue on appeal are "properly left to the sound professional judgment of counsel." United States v. Perry, 908 F.2d 56, 59 (6th Cir. 1990).

The Court considers the merits of Petitioner's claims to assess whether counsel was ineffective in failing to raise them on direct appeal.

First, Petitioner argues that counsel should have raised the claim that insufficient evidence was presented to establish the malice element of the crime of second-degree murder. Under Michigan law, to support a conviction of second-degree murder, the prosecution must prove that "defendant caused the death of the victim and that the killing was done with malice and without justification or excuse." People v. Harris, 190 Mich. App. 652, 659; 476 N.W.2d 767 (1991). "Malice" is defined as the intent to kill, the intent to do great bodily harm, or the wanton or willful disregard of the likelihood that the natural tendency of defendant's behavior is to cause death or great bodily harm. Id. "[T]he facts and circumstances of the killing may give rise to an inference of malice." People v. Carines, 460 Mich. 750, 759; 597 N.W.2d 130 (1999). "Malice may also be inferred from the use of a deadly weapon." Id. at 759. Several witnesses testified at trial that Petitioner shot the victim without provocation and, after the victim had been shot and had fallen to the ground, shot the victim twice more. The Court finds that is was not outside the wide range of professionally competent assistance for appellate counsel, given this testimony, to omit a claim of insufficient evidence on appeal.

Next, Petitioner argues that his appellate counsel should have argued on appeal that trial counsel was ineffective in failing to investigate and present evidence of Petitioner's innocence. According to Petitioner, the medical examiner's report supported Petitioner's version of events, that is, that he shot in self-defense, rather than eyewitnesses' testimony that he shot the victim from a distance of several feet away and did so unprovoked. In fact, the medical examiner testified that she saw no evidence of close range firing on any of the victim's wounds. The record shows that defense counsel effectively cross-examined the medical examiner regarding her autopsy results. Thus, counsel was not ineffective in railing to present this issue on appeal.

Petitioner claims that appellate counsel should have presented two prosecutorial

misconduct claims. First, according to Petitioner, the prosecutor failed to disclose exculpatory evidence. At trial, the prosecution presented one photograph of Petitioner. Petitioner maintains that several years after the trial he learned that five photographs of him were in the possession of the prosecutor. Petitioner argues that these photographs show assault wounds on his body and would have supported his claim of self defense because they showed scratches on his torso. The victim's mother admitted at trial that she tried to restrain Petitioner when he took out his firearm and tore his shirt off his body. Tonya Jones, the victim's sister, also admitted that she struck Petitioner in the face after learning he had struck her mother. Tonya Jones also testified that her sister-in-law struck Petitioner with her purse. Thus, evidence was presented to the jury regarding Petitioner's altercation with several women. Petitioner has not shown that the photographs reflecting this altercation were exculpatory. Counsel was not ineffective in failing to raise this claim on appeal.

Petitioner claims that appellate counsel should have presented a second claim of prosecutorial misconduct. He argues that the prosecutor committed misconduct by presenting a misleading exhibit to the jury, a photograph depicting the front and back of the victim's shirt. Petitioner argues this photograph was misleading because contradictory evidence was admitted at trial regarding the location of the bullet holes in the shirt versus the bullet wounds in the victim, and the chain of custody of the shirt. Defense counsel was free to cross-examine witnesses regarding these alleged inconsistencies and potential different interpretations of the holes in the shirt as depicted in the photograph. The inconsistences were not sufficient to implicate misconduct concerns and were, instead, properly the subject of cross-examination.

Petitioner has failed to establish cause to excuse the procedural default of his first, second, third, and sixth claims. Thus, these claims are procedurally defaulted unless Petitioner

can establish that a constitutional error resulted in a fundamental miscarriage of justice. Schlup v. Delo, 513 U.S. 298 (1995).

The Supreme Court explicitly has tied the miscarriage of justice exception to procedural default to a petitioner's innocence. Id. at 321. Thus, Petitioner must assert a constitutional error along with a claim of innocence. "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial." Id.

Petitioner has not supported his allegation of constitutional error with new reliable evidence of actual innocence that was not presented to the trial court. Accordingly, these claims are procedurally defaulted because Petitioner has failed to establish cause to excuse the default and also has failed to satisfy the manifest injustice exception to procedural default.

**B.     Sufficiency of the Evidence**

In his fourth claim for habeas corpus relief, Petitioner argues that insufficient evidence was presented to support his convictions on both counts of felonious assault.

In Jackson v. Virginia, 443 U.S. 307 (1979), the Supreme Court established that the standard of review for a sufficiency of the evidence challenge must focus on whether "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id. at 319 (emphasis in original). Pursuant to 28 U.S.C. § 2254(d)(1), this Court must determine whether the state court's application of the Jackson standard was contrary to or an unreasonable application of Supreme Court precedent. In making this determination, this Court must afford the state court's findings of fact a presumption of correctness unless it is established by clear and

14

convincing evidence that the factual determination in the state court was erroneous. 28 U.S.C. § 2254(e)(1); West v. Seabold, 73 F.3d 81, 83 (6th Cir. 1996), *cert. denied*, 116 S. Ct. 2569 (1996).

The last state court to issue a reasoned opinion regarding Petitioner's sufficiency of the evidence claim, the Michigan Court of Appeals, stated, in relevant part:

> Defendant argues that the evidence was insufficient to support his convictions of felonious assault. This Court evaluates a sufficiency of the evidence claim *de novo* by reviewing the evidence in a light most favorable to the prosecution to determine whether a rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt. People v Hampton, 407 Mich 354, 368; 285 NW2d 284 (1979); People v Oliver, 242 Mich App 92, 94-95; 617 NW2d 721 (2000). Defendant contends that the testimony against him was biased. This Court is required to draw all reasonable inferences and make credibility choices in support of the jury verdict. People v Nowack, 462 Mich 392, 400; 614 NW2d 78 (2000). Here, there was eyewitness testimony that defendant shot decedent three times and then fired at each of the two alleged assault victims. There was also testimony that one of the assault victims had bullet fragments in her arm. Additionally, there was evidence that nine rounds remained in defendant's gun, which held fourteen rounds, and, accordingly, that five shots could have been fired. Viewing the evidence in a light most favorable to the prosecution, a rational trier of fact could have found beyond a reasonable doubt that defendant feloniously assaulted the two victims.

Taylor, slip op. at p. 1.

The Court finds this resolution of Petitioner's sufficiency of the evidence claim was neither contrary to nor or an unreasonable application of clearly established federal law. The Court of Appeals' decision cited case law which plainly incorporated the Jackson standard and explained and supported its conclusion that a rational trier of fact could have found Petitioner guilty beyond a reasonable doubt. Petitioner has not presented any new evidence to show that the state court's findings of fact were erroneous. Therefore, according the state court's factual findings a presumption of correctness, *see* 28 U.S.C. § 2254(e)(1), this Court concludes that the state court of appeals' decision that all of the elements of the crime were satisfied did not

"result[] in a decision that . . . involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

### C. Alleged Ineffective Assistance of Counsel

Petitioner argues that his trial counsel was ineffective in failing to secure and call a *res gestae* witness. Specifically, Petitioner argues that counsel should have called Bonnie Hayes, who was residing in Maine at the time of the trial.

As discussed above, the Supreme Court established a two-pronged test for determining whether a habeas petitioner has received ineffective assistance of counsel. Strickland 466 U.S. 668 (1984). The two-pronged test requires a petitioner to prove that counsel's performance was deficient, and that counsel's deficient performance prejudiced petitioner. Id. at 687.

The Michigan Court of Appeals held that counsel was not deficient in arranging for the presence of Hayes. The state court held that the decision not to call Hayes was one of sound trial strategy. In addition, the state court held that counsel's failure to secure Hayes' testimony did not prejudice Petitioner's defense. Given the strength of the evidence against Petitioner and that Hayes' view of the altercation was from a considerable distance, the Court finds that the state court's decision that Petitioner was not prejudiced by Hayes absence was not contrary to or an unreasonable application of Strickland.

### D. Jury's Request for Transcripts and To Question Witnesses

Finally, Petitioner argues that the trial court erred in denying the jury's request for a transcript and in denying a jury request to question witnesses. Respondent argues that these claims are procedurally barred. The last state court to issue a reasoned opinion regarding these claims, the Michigan Court of Appeals, held that the claims were not preserved for review

16

because counsel did not object to the trial court's response to the jury's request for a transcript and because Petitioner abandoned his claim regarding the jury's request to question witnesses. The state court clearly relied on state court procedural rules to deny Petitioner's claims. These claims therefore are procedurally barred unless Petitioner can establish cause and prejudice to excuse his default or that failure to consider the claims will result in a fundamental miscarriage of justice. Coleman, 501 U.S. at 729-30.

Petitioner asserts ineffective assistance of counsel as cause to excuse the default. In response to the jury's request for the trial transcript, the trial court did not foreclose *any* use of transcripts. The court instead denied the request for the *entire* transcript. The court specifically left open the possibility that if, after deliberating and relying on their collective memories, the jurors felt they required specific portions of the trial transcript, that issue could be revisited. Petitioner fails to show that the trial court's handling of this issue was inappropriate. Therefore, he cannot show that his trial attorney was ineffective in failing to object.

Second, Petitioner argues that the trial court erred in denying a jury request to ask questions of witnesses. Whether to allow jurors to question witnesses is left to the sound discretion of the trial court. U.S. v. Collins, 226 F.3d 457, 461-62 (6th Cir. 2000). The practice is generally discouraged because the risks of complications outweigh the potential benefits. Id. Petitioner has not shown that he has a constitutional right for jurors to be permitted ask questions, nor has he shown that the trial court's denial of the jury's request was an abuse of discretion. Therefore, his trial attorney was not ineffective in failing to object.

In addition, as discussed above, Petitioner has not supported his allegation of constitutional error with new reliable evidence of actual innocence that was not presented to the

trial court. Therefore, his final claim is procedurally defaulted.

## IV. Conclusion

For the foregoing reasons, **IT IS ORDERED** that the petition for a writ of habeas corpus is **DENIED** and the matter is **DISMISSED WITH PREJUDICE**.

Dated: November 20, 2007

S/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

---

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
November 20, 2007, by electronic and/or ordinary mail.

S/Josephine Chaffee
Deputy Clerk